**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| A. SAMSON PILLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09 C 5725 |
| | ) | |
| MILLARD REFRIGERATED SERVICES, INC., | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

A. Samson Pillay alleges that Millard Refrigerated Services ("Millard") is liable for retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*, for terminating Pillay's employment after Pillay opposed Millard's decision to terminate another employee, Anthony Ramirez, because of a perceived disability. Presently before the court is Pillay's motion for an adverse inference jury instruction based on Millard's failure to preserve evidence used to substantiate Ramirez's termination.[1] For the reasons stated below, Pillay's motion is granted.

**BACKGROUND**

Millard employed a labor management system ("LMS") to track its warehouse employees' productivity and performance. On July 28, 2008, Millard hired Ramirez as a regular employee and assigned him to a position operating a forklift. Millard initially told Ramirez that his LMS numbers were great and that he was performing satisfactorily. Shortly thereafter, the

---

[1] Ramirez was also a plaintiff in this lawsuit but accepted an offer of judgment from Millard. *See* Dkt. 152.

general manager of the Millard plant where Ramirez worked emailed Millard's senior vice president of human resources regarding a prior work injury that Ramirez suffered rendering him with a disability rating of 17.5 percent by the Illinois Industrial Commission. The senior vice president responded, writing, "We have this all documented right? ... Let's get him out asap." Pillay's Mot. at 2. Millard terminated Ramirez's employment shortly thereafter on August 21, 2008. Millard contends that Ramirez's termination resulted from his unacceptable LMS performance rating of 59 percent.

      Pillay argues that Millard terminated Ramirez because Millard believed that Ramirez was disabled, and its reliance on the LMS performance rating is pretext. Pillay contends that the underlying LMS data could have been manipulated to skew an overall performance rating. For example, Millard's 30(b)(6) witness, Allen Benjamin, testified that supervisors could lower an LMS performance rating by deleting the underlying data showing that an employee worked a certain number of jobs for a given period of time. A supervisor failing to input that an employee performed a task that took a given period of time could result in the employee's having a lower LMS performance rating. Pillay notes that Ramirez's underlying LMS numbers appear to have been manipulated, relying on the fact that Ramirez's LMS numbers for one week indicate that he only worked 104 hours when he would have been expected to work 160 hours.

      In August 2009, the raw data used to create Ramirez's LMS numbers were deleted because the LMS software automatically deleted the underlying data after a year. Before the information was deleted, Pillay notes that he and Ramirez sent numerous pieces of correspondence alerting Millard of the need to preserve this evidence. Specifically, Pillay sent Millard a demand letter in September 2008 and both Pillay and Ramirez sent preservation

notices in December of 2008 reminding Millard of its obligations to preserve evidence. Specifically, on December 10, 2008, John Ireland, Ramirez's and Pillay's counsel, sent Steven L. Offner, Millard's general counsel, a letter informing him, *inter alia*, that Millard was "to preserve evidence and documents" including electronic communications or data related to his clients' employment, specifically citing "[a]ll communications, documents, emails, or anything relating to Mr. Ramirez's productivity and work evaluations." Pillay's Mot., Ex. H. Pillay and Ramirez also filed charges with the United States Equal Employment Opportunity Commission ("EEOC") in January 2009 alleging discrimination and retaliation and, in response to the EEOC charges, Millard relied on Ramirez's deficient LMS rating to explain his termination. In July 2010, Millard notified Pillay that the data used to calculate Ramirez's LMS numbers had been deleted. Millard explained that "the discrete data [that formulates LMS numbers] is automatically deleted after one year" to keep its system operating at an optimal level. Pillay's Mot., Ex. F. Millard also attached a declaration from Sean Kimble, another senior vice president of human resources, who stated that Millard did not use the underlying data in making personnel decisions. Millard's Resp., Ex. A at ¶¶ 3–4.

**LEGAL STANDARD**

A party that knows or should know that litigation is imminent has a duty to preserve evidence in its control. *See Trask-Morton* v. *Motel 6 Operating, L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Bryant* v. *Gardner*, 587 F. Supp. 2d 951, 967–68 (N.D. Ill. 2008). The judge may instruct the jury to infer that destroyed evidence was unfavorable when a party intentionally destroys that evidence in bad faith. *See Faas* v. *Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th

Cir. 2008). The proper focus is the reason for the destruction not that the evidence was destroyed. *Id*.

## ANALYSIS

Pillay argues that Millard had a duty to preserve the underlying LMS data and its failure to do so evidenced bad faith, which warrants an adverse inference instruction. Millard argues that an adverse jury instruction for failure to preserve the overwritten data is unwarranted because Millard had no obligation to preserve the overwritten data and there is no evidence that it acted in bad faith by allowing the data to be deleted.[2]

### I. Whether Millard Had a Duty to Preserve the Underlying LMS Data

Pillay first must demonstrate that Millard had a duty to preserve the underlying LMS data. A party has a duty to preserve evidence that is discoverable under Federal Rule of Civil Procedure 26. *See YCB Int'l, Inc.* v. *UCF Trading Co.*, No. 09 C 7221, 2012 WL 3069683, at *6 (N.D. Ill. June 12, 2012). Rule 26's broad duty of disclosure provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Here, Pillay notified Millard of his intention to file the present lawsuit well before the LMS data were automatically overwritten in August 2009. In September 2008 shortly after his termination, Pillay sent demand a letter placing Millard on notice of an impending lawsuit.

---

[2] The decision regarding whether to grant an adverse inference instruction is governed by federal law because Pillay's claim arises under federal law. *See Miksis* v. *Howard*, 106 F.3d 754, 763 (7th Cir. 1997); *see also Allstate Ins. Co.* v. *Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995) (pre-suit duty to preserve evidence governed by state law in case arising under a federal court's diversity jurisdiction).

Pillay and Ramirez also filed charges with the EEOC giving Millard another reason to believe that litigation was imminent. Indeed, Pillay and Ramirez sent Millard preservation notices in December 2008 approximately eight months before the deletion of the LMS data. Although Millard deleted the LMS numbers before Pillay and Ramirez filed this lawsuit, Pillay and Ramirez's pre-filing correspondence with Millard in addition to their filing EEOC charges gave the requisite notice of a possibility of litigation invoking Millard's preservation duty. *See Buonauro* v. *City of Berwyn*, No. 08 C 6687, 2011 WL 3754820, at *6 (N.D. Ill. Aug. 25, 2011) (duty to preserve arises not when a lawsuit is filed but when a party should anticipate litigation).

Although Millard contends that this information is not relevant, the inquiry is whether this information is the type that would have been discoverable under Rule 26. *See Larson* v. *Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *11 (N.D. Ill. Aug. 18, 2005) ("[A] party cannot destroy documents based solely on its own version of the proper scope of its document retention responsibilities.") (internal quotation marks omitted). Millard used the underlying LMS data to calculate the overall percentage rating for an employee and argued that Ramirez's poor rating precipitated his termination. Indeed, Millard relied on this information when responding to the EEOC charges, which occurred before the deletion of the underlying LMS data. Information regarding the underlying LMS data would have been discoverable to challenge Millard's explanation for Ramirez's termination. *See YCB Int'l*, 2012 WL 3069683, at *6 ("A party must preserve evidence that it has notice is reasonably likely to be the subject of a discovery request, even before a request is actually received."). Accordingly, Millard had a duty to preserve this evidence.

5

II.      **Whether Millard Acted with the Requisite Culpability when Failing to Preserve the Underlying LMS Data**

Pillay next must show that Millard acted with the requisite culpability when allowing the underlying LMS data to be deleted. The destruction of relevant evidence, by itself, does not warrant an adverse inference instruction. *See Norman-Nunnery* v. *Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). Pillay must demonstrate that Millard acted in bad faith, which is akin to conduct that is intentional or reckless. *See YCB Int'l*, 2012 WL 3069683, at *10. A document is destroyed in bad faith if done with the purpose of hiding adverse information. *See Faas*, 532 F.3d at 644. A court looks to the surrounding circumstances to determine if the facts support an inference of bad faith. *See Wiginton* v. *Ellis*, No. 02 C 6832, 2003 WL 22439865, at *7 (N.D. Ill. Oct. 27, 2003). Reckless conduct rises above a mistake or carelessness and evinces a conscious disregard of a duty. *See Marracco* v. *Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *accord* Restatement (Second) of Torts § 908(2) (1979) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."); *Bullock* v. *BankChampaign, N.A.*, --- S. Ct. ----, 2013 WL 1942393, at *5 (May 13, 2013) ("Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty.") (internal quotation marks omitted).

Pillay argues that Millard intentionally or, at a minimum recklessly, allowed the underlying LMS data to be deleted. Millard, argues Pillay, had ample notice that it had a duty to preserve this information evidenced by the demand letter and preservation notices in addition to the EEOC charges. Millard contends that it never affirmatively deleted the underlying LMS

data. Rather, states Millard, the LMS software automatically overwrote this type of data after a year. *See Buonauro*, 2011 WL 3754820, at *10 ("[T]he destruction of evidence by means of a party's ordinary document retention policy can be a sign that it did not act in bad faith.").

Here, Millard was on notice that Ramirez's LMS performance was at issue and still failed to preserve the underlying data. *See Wiginton*, 2003 WL 22439865, at *7 ("[O]nce a party is on notice that specific relevant documents are scheduled to be destroyed according to a routine document retention policy, and the party does not act to prevent that destruction, at some point it has crossed the line between negligence and bad faith."). As general counsel, Mr. Offner is charged with knowledge of the duty to preserve evidence after receiving the December 10, 2008 letter from plaintiffs' counsel. There is no evidence that he took any action to intercept the automatic deletion of relevant evidence. As such, recklessness and bad faith are permissible inferences.

Even if merely negligent, however, sanctions can still be appropriate when a party's culpability is based on fault. *See Marrocco,* 966 F.2d at 224 ("[S]anctions may be appropriate in any one of three instances – where the noncomplying party acted *either* with wilfulness, bad faith, *or* fault.") (emphasis in original); *Gutierrez* v. *P.A.L., Ltd.*, No. 10 C 4152, 2011 WL 6019393, at *3 (N.D. Ill. Nov. 23, 2011) ("An adverse inference sanction may be imposed where such a sanction is proportionate with the circumstances involved, the misconduct was prejudicial to the other party, and the misconduct evinces willfulness, bad faith, or fault."). Fault entails actions deemed "objectively unreasonable." *Oce N. Am., Inc* v. *Brazeau*, No. 09 C 2381, 2010 WL 5033310, at *6 (N.D. Ill. Mar. 18, 2010) (internal quotation marks omitted). Even if Millard's failure to preserve the underlying LMS data did not rise to the level of bad faith, it falls

7

squarely within the realm of conduct deemed to constitute fault. That Millard knew about the pending lawsuit and that the underlying LMS data would be deleted but failed to preserve the information was objectively unreasonable. Accordingly, even without a finding of bad faith, the court may craft a proper sanction based on Millard's failure to preserve the underlying LMS data. *See*, *e.g.*, *Banks* v. *Enova Fin.*, No. 10 C 4060, 2012 WL 5995729, at *3 (N.D. Ill. Nov. 30, 2012) (affirming the magistrate judge's decision to sanction the defendant that failed to preserve an audio recording by imposing a spoliation instruction instead of an adverse inference instruction that permitted but did not require that the jury find that the destroyed evidence was harmful to the defendant's case).

### III.    Whether Pillay Suffered Prejudice Warranting a Sanction

Courts examine the prejudice to the parties in deciding whether a sanction is appropriate in cases where a party destroys evidence. *See Bryant*, 587 F. Supp. 2d at 968; *Larson*, 2005 WL 4652509, at *13. Factors that guide the court's decision include whether the party seeking the remedy suffered prejudice and the extent by which an adverse inference instruction can alleviate that prejudice. *See Top Tobacco, L.P.* v. *Midwestern Cash & Carry, LLC*, No. 11 C 4460, 2012 WL 4490412, at *1 (N.D. Ill. Sep. 27, 2012).

Pillay argues that the underlying LMS data would contradict Millard's position that Ramirez had a low performance rating. Without the underlying dates, argues Pillay, he cannot point to specific data showing that Millard relied on a faulty LMS performance rating or that Millard manipulated that data to provide cover for Ramirez's illegal termination. Moreover, that Millard's decisionmakers referenced Ramirez's perceived disability when deciding to terminate his employment further supports Pillay's theory that Millard manipulated the underlying LMS

numbers to substantiate a valid reason for the termination. Pillay has suffered prejudice because he cannot challenge Ramirez's LMS performance rating with the underlying data. To alleviate the prejudice, the court will give Seventh Circuit Pattern Jury Instruction 1.20, approximately as follows:

> Pillay contends that Millard at one time possessed data documenting Ramirez's productivity and performance that was destroyed by Millard. Millard contends that the loss of the data was accidental. You may assume that such evidence would have been unfavorable to Millard only if you find by a preponderance of the evidence that (1) Millard intentionally or recklessly caused the evidence to be destroyed; and (2) Millard caused the evidence to be destroyed in bad faith.

The court will also instruct the jury that reckless conduct rises above a mistake or carelessness and evinces a conscious disregard of a duty. One may infer that conduct was in bad faith if it was intentionally or recklessly done.

## CONCLUSION

Pillay's motion for an adverse inference jury instruction is granted.

ENTER:

Dated: May 22, 2013

_____
JOAN HUMPHREY LEKFOW
United States District Judge

9